IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Alessandra Staley, | ) | C/A No.: 3:13-280-MGL-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Computer Sciences Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

In this employment discrimination case originally filed in federal court on January 30, 2013, Alessandra Staley ("Plaintiff") sues her former employer, Computer Sciences Corporation ("Defendant"), listing nine causes of action, including federal discrimination claims and state law breach of contract claims. [ECF No. 1].

This matter comes before the court on Defendant's motion for summary judgment filed on July 1, 2014 [ECF No. 47], and Plaintiff's motion to dismiss for lack of jurisdiction filed on August 6, 2014 [ECF No. 53]. The motions having been fully briefed [ECF Nos. 51, 52, 54, 55], they are ripe for disposition. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2)(g) (D.S.C.). Because the motions are dispositive, this report and recommendation is entered for the district judge's consideration.

Defendant's motion for summary judgment seeks a substantive determination on all of Plaintiff's causes of action. [ECF No. 47]. In her response, Plaintiff addresses only

the breach of contract claims and does not contest the motion for summary judgment on the remaining federal claims. [ECF No. 51]. Almost three weeks after filing her response, Plaintiff filed her motion to dismiss, titled "Motion for the court to decline to exercise supplemental jurisdiction." [ECF No. 53].  In it, Plaintiff seeks to dismiss her federal claims and asks the court to decline jurisdiction over the breach of contract claims to allow her to refile them in state court.

For the reasons that follow, the undersigned recommends the district court grant Defendant's motion for summary judgment and deny Plaintiff's motion to dismiss.

I.      Factual and Procedural Background

Plaintiff accepted a position with Defendant as a Programmer Analyst Associate Professional in its Property and Casualty ("P&C") Division pursuant to an offer letter dated December 17, 2009 ("Offer Letter"). [ECF No. 47-6 at 1–3]. Plaintiff was hired pursuant to the "Navigate Training Program," which provides a 30-day training for entry level employees in business analyst and programmer analyst roles. [Pl.'s Dep. 55–57].[1] After completing the 30-day program, Defendant assigned Plaintiff to work on the Hartford account. [Pl.'s Dep. 58:12–16]. Although she was hired as a programmer

---

[1] Plaintiff's entire deposition was not provided by either party.  Rather, Defendant provided excerpts of Plaintiff's deposition at ECF Nos. 47-2 through 47-5. Plaintiff attached supporting deposition excerpts as 34 separate exhibits to her response [ECF No. 51].  Counsel is advised that in the future, providing the entire miniscript deposition in a single exhibit for depositions of primary deponents would make the record easier to review and to cite to in proper form. *See* Local Civ. Rule 7.05 and *The Bluebook: A Uniform System of Citation,* B7.1.2 (Columbia Law Review Ass'n et al. eds., 19th ed. 2010) ("Give as precise a reference as practicable to the cited document, such as the line and page on which the material appears in the cited deposition . . . .").

analyst, Plaintiff performed the duties of both a programmer analyst and a business analyst. [Pl.'s Dep. 55–61, 69–70, 99].

In October 2011, Defendant finished the Hartford project. [Pl.'s Dep. at 71, 79; Branham Dep. at 62] (Branham deposition excerpts available at ECF No. 47-11). Defendant states that thereafter, the bulk of the Hartford project staff was reassigned or subject to layoff. [McDaniel Declaration ¶ 7, available at ECF No. 47-12 ("McDaniel Decl.")]. In October 2011, Plaintiff was transferred to the Unitrin account under the supervision of Manager Ondra Branham, Team Lead Pallav Boonlia, and Project Manager Wayne McDaniel. [*Id.* at ¶ 6; Pl.'s Dep. 79, 81, 83, 89]. Plaintiff retained the title of programmer analyst. [Pl.'s Dep. 81:13–14]. Plaintiff alleges she was not assigned programming job duties, but was instead given the responsibilities of a business analyst. [ECF Nos. 51-17, 51-5; Pl.'s Dep. 81:8–16, 332–334]. She alleges that her transfer to the Unitrin account deprived her of the opportunity and training to work as a programmer analyst. [ECF No. 51 at 5].

Plaintiff took maternity leave from February 7 to June 6, 2011, and returned to her same title, duties, and pay. [ECF No. 51-22: Pl.'s Dep. 100:19–25; 106:12–24]. While Plaintiff was out on leave, Defendant offered Java training to programmer analysts on the Unitrin account. [Branham Dep. 60:14–25; Pl.'s Dep. 117:1–21]. Defendant states its original goal was to offer the training first to its senior programmer analysts, but it was ultimately discontinued. [Branham Dep. 59–60, 104]. Plaintiff requested the Java training opportunities that her coworkers had while she was out on maternity leave, believing the training would have assisted her in transitioning to perform programming duties on the

Unitrin account. [ECF No. 51 at 7–8]. Plaintiff alleges that Branham denied her the training. [ECF No. 1 at ¶ 13]. Defendant states that the request was denied because it had already made the decision to discontinue the training. [Branham Dep. 88:15–91:6, 103:5–105:24; Pl.'s Dep. 119:21–120:23]. Plaintiff was advised to work with her team lead for hands-on training. [Pl.'s Dep. 120:7–12].

In August 2011, Plaintiff's performance was assessed as "Partially Meets Expectations" in her first full annual review, which was the second lowest rating an employee could receive. [ECF No. 47-9 at 9–13; Pl.'s Dep. 125:5–8]. The review noted Plaintiff required micromanaging: "Alessandra will take on new tasks but she struggles to complete them without support from other team members. As such, this dependency affects the quality and quantity of her work that can be done in a timely manner." [ECF No. 47-9 at 12]. Plaintiff believed that the evaluation was unfair because she thought she was being evaluated as a business analyst as opposed to a programmer analyst for which she was hired. [Pl.'s Dep. 129:14]. Plaintiff was given performance objectives that were subsequently evaluated during an interim appraisal on February 7, 2012. [ECF No. 47-10 at 1–7; McDaniel Decl. ¶ 9].

In her interim appraisal, Plaintiff received the lowest possible rating of "Below Expectations." [ECF No. 47-10 at 7]. The review continued the theme of her prior evaluation, to wit:

> She relies heavily on support from other team members to finish any tasks assigned to her currently and has done so during the past six months. Feedback from her teams indicates that she can only complete tasks when she is given step by step instructions to complete those tasks and even in those situations, requires oversight. She is not confident in decisions

relating to her work tasks and as such, delays work efforts if left to work independently.

*Id.*

The "Below Expectations" rating resulted in Plaintiff's being placed on a formal 30-day Performance Improvement Plan ("PIP") on February 24, 2012. [*Id.* at 7–10]. An employee relations representative, Kobra Martinez ("Martinez"), was assigned to work with Plaintiff and Branham on the PIP. [Pl.'s Dep. 176:12–22]. The PIP consisted of seven basic programming tasks with expected dates of completion. [ECF No. 47-10 at 8–10].

Approximately one hour before her scheduled meeting with Branham to discuss her PIP objectives and tasks, Plaintiff emailed Martinez complaining that she was being given assignments that were unfair. [ECF No. 51-34]. Plaintiff stated that she felt she was being retaliated against or otherwise set up for failure. *Id.* Plaintiff apparently contacted Martinez because she expected that her employment would be terminated based upon her failure to complete the previous day's assignment. [Pl.'s Dep. 150:12–152:20, 175:4–176:11]. However, Plaintiff's meeting with Branham focused solely on the PIP tasks. [Pl.'s Dep. 150:12–152:20]. There was no mention of the previous day's incident. *Id.* Plaintiff did not mention to Branham that she had emailed Martinez. [Pl.'s Dep. 179:1–3]. Plaintiff also admits that she never told Martinez that she believed she was being discriminated against. [Pl.'s Dep. 180:22–181:16]. Plaintiff states that Branham recited the option of placing Plaintiff on a 30-day or 90-day PIP on which she would be

evaluated, with the possibility of reassignment, demotion, and termination, allegedly focusing on her intention to terminate Plaintiff's employment. [Pl.'s Dep. 145:12–25].

As she completed the PIP tasks, Plaintiff was also assigned two tasks specifically related to the Unitrin account, one that she was unable to successfully complete and the other that she turned in late, after having failed to notify Branham or Boonlia that she needed help on it until the due date. [*Id.*; Pl.'s Dep. 181:22–182:10, 184:6–186:20; ECF No. 47-10 at 12]. On March 28, 2012, Plaintiff met with Branham, who extended the PIP until April 16, 2012. [ECF No. 47-10 at 12]. Plaintiff states that Branham recited the options of reassignment, change in supervision, demotion, and termination, allegedly focusing on her intention to terminate Plaintiff's employment. [Pl.'s Dep. 190:8–191:24].

Defendant expected to complete the Unitrin project in April or May 2012. [Pl's Dep. at 94:12–16]. In April 2012, Defendant determined that a reduction-in-force ("RIF") was necessary for the P&C group due to a decline in billable work. [McDaniel Decl. at ¶ 10; Pl.'s Dep. 233:20–24, 236]. McDaniel instructed his managers to rank their employees according to their performance evaluations. [McDaniel Decl. ¶ 10]. Plaintiff was ranked at the bottom because she received the lowest performance rating. *Id.*. Defendant argues that given Plaintiff's continued performance problems and the fact that her peers performed better than she did, McDaniel selected Plaintiff for layoff in the RIF. [*Id.* at ¶ 11]. Defendant states that Plaintiff's position was eliminated and that she was not replaced. [*Id.* at ¶ 13]. Defendant notes that several other employees were terminated as part of the RIF on the same day that Plaintiff was terminated, all of whom had more tenure and more advanced skills than Plaintiff. [*Id.* at ¶ 14]. On April 20, 2012, Plaintiff

was informed by McDaniel that her job was being eliminated and that effective April 27, 2012, she would no longer be employed. [ECF No. 47-12 at 4–5; Pl.'s Dep. 233:14–24].

Prior to her termination, Plaintiff contacted Defendant's ethics hotline on April 9, 2012. [Pl.'s Dep. 197:8–14]. Following the call, the ethics department reduced Plaintiff's complaint to written form [ECF No. 47-10 at 13–16], which Plaintiff then reviewed and verified. [Pl.'s Dep. 197:8–199:16]. In her ethics complaint, Plaintiff claimed that since her interim appraisal on February 7, 2012, she had been subjected to harassment. [ECF No. 47-10 at 13–16]. Plaintiff did not identify any link between the alleged harassment and her age, national origin, race, pregnancy-related leave, or any other protected characteristic. *Id.* Instead, Plaintiff's ethics complaint focused on her performance problems, performance appraisals, and PIP. *Id.* According to Defendant, because Plaintiff's complaint related directly to her performance issues, its ethics department directed Plaintiff to discuss the issues with Martinez, the employee-relations representative working on the PIP. *Id.*

On May 24, 2012, Plaintiff filed a charge of discrimination ("Charge") with the South Carolina Human Affairs Commission ("SCHAC") alleging age, sex, and national origin discrimination. [ECF No. 47-10 at 17]. After receiving a dismissal and notice of right to sue, Plaintiff chose to file suit in this court on January 30, 2013. [*Id.* at 18; ECF No. 1].

II.    Discussion

A.    Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.* at 248.

B.    Analysis of Summary Judgment Motion

Although in her response, Plaintiff failed to substantively defend the motion for summary judgment on her federal claims, for the sake of completeness, the undersigned addresses all the claims asserted in the complaint.

In her **First Cause of Action**, Plaintiff alleges that she was discriminated against on the basis of her national origin in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.* ("Title VII"). Plaintiff also alleges that she was subjected to disparate treatment and a hostile work environment in violation of Title VII. [ECF No. 1 at 4–5].

In her **Second Cause of Action**, Plaintiff alleges that she was discriminated against on the basis of her sex and pregnancy in violation of Title VII. Plaintiff also alleges that she was subjected to disparate treatment and a hostile work environment in violation of Title VII. [*Id.* at 5–6].

In her **Third Cause of Action**, Plaintiff alleges that she was discriminated against on the basis of her age, in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA"). [*Id.* at 6–7].

In her **Fourth Cause of Action**, Plaintiff alleges that she was retaliated against after filing a complaint through Defendant's ethics and compliance hotline complaining of harassment and retaliation. [*Id.* at 7].

In her **Fifth Cause of Action**, Plaintiff alleges that she was subjected to a racially hostile work environment in violation of Title VII and the South Carolina Human Affairs

9

Law ("SCHAL").[2] Plaintiff also alleges that she was subjected to retaliation and harassment. [*Id.* at 8].

In her **Sixth Cause of Action**, Plaintiff alleges that Defendant violated the Family Medical Leave Act ("FMLA") by failing to provide her the necessary training to perform her job duties in retaliation for Plaintiff's taking FMLA leave and by discriminating against her for having applied for FMLA leave during the course of her pregnancy. *Id.*

In her **Seventh Cause of Action**, Plaintiff alleges a claim for breach of contract concerning the PIP and her ethics complaint. *Id.* at 9.

In her **Eighth[3] Cause of Action**, Plaintiff alleges a claim for breach of contract with fraudulent intent, alleging Defendant "has failed to fulfill its obligations under its policy and has breached the terms thereof by reason of intentional designs on its part to defraud Plaintiff of her employment." *Id.* at 9–10.

In her **Ninth Cause of Action**, Plaintiff alleges a claim for breach of implied duty of good faith and fair dealing of Defendant's "policy," although she does not identify the policy on which she sues. *Id.* at 10.

      1.      Unexhausted Race and Retaliation Claims Fail (Fourth and Fifth Causes of Action)

Plaintiff asserts that she was subjected to a racially hostile work environment and

---

[2] Plaintiff's hostile work environment claim also references a "violation of 42 U.S.C. Sec. 1081" [ECF No. 1 at ¶ 58], which does not provide a cause of action for Plaintiff's purported claim. Any such claim is subject to dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

[3] Plaintiff lists two Seventh Causes of Action, followed by an Eighth Cause of Action. [ECF No. 1 at 9–10]. The undersigned has correctly numbered the causes of action herein for ease of reference.

was retaliated against for complaining of harassment. [ECF No. 1 at 7–8]. A plaintiff asserting discrimination or retaliation under SCHAL or Title VII is required to exhaust her administrative remedies by filing a charge of discrimination with the EEOC or state agency (SCHAC) before filing a civil suit. 42 U.S.C. 2000e-5; S.C. Code Ann. § 1-13-90; *Miles v. Dell, Inc.*, 429 F.3d 480, 492 (4th Cir. 2005) (holding that dismissal for failure to exhaust administrative remedies is appropriate where a plaintiff fails to check the retaliation box on her agency charge and makes no reference to retaliation in the narrative portion of the charge).

In her Charge, Plaintiff did not check the boxes for race or retaliation and did not allege in the narrative portion that she was retaliated against, that she complained of race discrimination or harassment, or that she was subjected to race-based discrimination or harassment. Because Plaintiff failed to include any such claims in her Charge, she has failed to exhaust her administrative remedies.  Therefore, Plaintiff's claims of racially hostile work environment and retaliation are subject to dismissal.

2.    Discrimination Claims Fail (First, Second, and Third Causes of Action)

Plaintiff also asserts that she was discriminated against based upon her national origin (American), her sex (female), and her age (42 years old).  She alleges that she was treated less favorably than younger males of Indian and Vietnamese origin.

Because Plaintiff has not presented any direct evidence of employment discrimination by Defendant, she may prove her allegations under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny.

Under this test, Plaintiff must first establish, by a preponderance of the evidence, a *prima facie* case of discrimination. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506 (1993). To do so, Plaintiff must generally show: (1) she is a member of a protected class; (2) she was performing her duties in a satisfactory manner; (3) she was subjected to an adverse employment action; and (4) she received different treatment than similarly-situated employees outside of her protected class. *Coleman v. Maryland Court of Appeals,* 626 F.3d 187, 190 (4th Cir. 2010); *Hemphill v. United Parcel Serv., Inc.*, 975 F. Supp. 2d 548, 556 (D.S.C. 2013).

If Plaintiff establishes a prima facie case, the burden shifts to Defendant to produce a legitimate, nondiscriminatory reason for its decision. *Hemphill*, 975 F. Supp. 2d at 557. This is merely a burden of production, not of persuasion. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).

Once Defendant meets its burden by producing a legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination *vel non.*" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by Defendant is not its true reason, but was pretext for discrimination. *Reeves*, 530 U.S. at 143. Throughout the burden-shifting scheme set forth in *McDonnell Douglas*, the ultimate burden of proving that Defendant intentionally discriminated against Plaintiff remains at all times with Plaintiff. Plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude Defendant intentionally discriminated against her.

Defendant argues that Plaintiff has failed to establish a prima facie case of discrimination on sex, national origin, or age. Plaintiff alleges that she was subjected to the following disparate treatment: (1) she was not allowed to attend the Java training class that her younger, male counterparts of Indian and Vietnamese descent attended; (2) she was not provided with the correct equipment for a programmer and was not assigned programmer duties; (3) she was the only female under Boonlia; and (4) that Branham told her she did not see her as a technician. None of these allegations gives rise to an actionable claim for disparate treatment because Plaintiff cannot meet the third element of the prima facie test that she suffered an adverse employment action.[4]

To show an adverse employment action, Fourth Circuit case law mandates that Plaintiff show an "ultimate employment action that affects hiring, granting leave, discharging, promoting, and compensating." *Brockman v. Snow*, 217 F. App'x. 201, 205–06 (4th Cir. 2007) (internal quotations omitted).  The Fourth Circuit has held that "the mere fact that a new job assignment is less appealing to the employee, however, does not constitute adverse employment action," and that "absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position." *James v. Booz–Allen & Hamilton, Inc.,* 368 F.3d 371, 376 (4th Cir. 2004) (quoting *Boone v. Goldin,* 178 F.3d 253, 256–57 (4th Cir. 1999)).

---

[4] In her deposition, Plaintiff did not list her discharge as a discriminatory action, and instead identified it as a retaliatory action. [Pl. Dep. at 261–62, 265–68].

First, the denial of training does not constitute an adverse employment action if it does not have a "significant detrimental effect." *Muhammad v. Westinghouse Electric Co.*, No. 3:12-cv-3298-JFA, 2013 WL 5469982, at *12 (D.S.C. Sept. 30, 2013) ("It is clear that Plaintiff was dissatisfied with her lack of training, but that fact alone does not constitute adverse employment action. The question is whether the lack of training had a significant detrimental effect on her.") (citing *Boon v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999)). Plaintiff cannot establish that the denial of her request to attend Java training had a significant detrimental effect on her employment. The Java training was designed to transition a programmer trained on COBOL mainframe programming language to the Java platform. [Branham Dep. 59:2–25]. Defendant argues that because Plaintiff already had extensive training on Java prior to her employment, she should not have needed a basic Java training class:

> There was no additional training she should have needed to do a programmer's job, so no, there was not training she was prevented from attending that would have helped her be a programmer because she was already trained to be a programmer.

[Branham Dep. 88:20–25]. Plaintiff herself admits that she was knowledgeable on Java programming: ". . . I know Java programming." [Pl.'s Dep. 152:13–14].

Second, Plaintiff's allegation that she was not provided with the correct equipment for a programmer and was not assigned programmer duties is also insufficient to establish an adverse employment action. *See Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 243 (4th Cir. 1997) (holding that giving an employee less preferable work

assignments, excluding her from meetings, or ignoring her is not enough for an adverse employment action).

Lastly, Plaintiff's allegations that she was the only female under Boonlia and that Branham told her she did not see her as a technician are insufficient to establish an adverse employment action. *James v. Booz–Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) ("[a]n adverse employment action is a discriminatory act which adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.").

Because none of the foregoing allegations has been shown to constitute an adverse employment action under Title VII or the ADEA, summary judgment is appropriate on Plaintiff's discrimination claims. To the extent that Plaintiff intended to allege that she was terminated in violation of Title VII or the ADEA, she has not demonstrated that she was performing her duties in a satisfactory manner, having received a "Below Expectations" evaluation in the months leading to her termination.

### 3.     FMLA Claim Fails (Sixth Cause of Action)

Plaintiff next asserts that she was retaliated against for having taken FMLA leave in early 2011 by (1) not providing her with a training class she missed while on leave and (2) terminating her employment almost a year later in April 2012. [ECF No. 1 at 8–9]. For the same reasons outlined above, the denial of the training class does not constitute an adverse employment action.  Independently, Plaintiff has demonstrated no evidence of a causal connection between her FMLA leave in early 2011 and her discharge almost a year later. Plaintiff having failed to demonstrate that there is a genuine dispute as to any material fact on her FMLA claim, Defendant is entitled to judgment as a matter of law.

4.      Breach of Contract Claims Fail (Seventh, Eighth, and Ninth Causes
        of Action)

In her last three causes of action, Plaintiff asserts claims for breach of contract, breach of contract with fraudulent intent, and breach of the covenant of good faith and fair dealing. Under South Carolina law, "there exists in every contract an implied covenant of good faith and fair dealing." *Williams v. Riedman*, 529 S.E.2d 28, 36 (S.C. 2000). However, "the implied covenant of good faith and fair dealing is not an independent cause of action separate from the claim for a breach of contract." *RoTec Serv., Inc. v. Encompass Serv., Inc.*, 597 S.E.2d 881 (S.C. Ct. App. 2004). Because there is no independent cause of action for breach of the covenant of good faith and fair dealing, the court need not separately address it.

In her response to summary judgment, Plaintiff substantively responds in support of her breach of contract claims, asserting the following documents are contracts: (1) the Code of Ethics within Defendant's Employee Handbook [Handbook at ECF No. 47-7 *et seq.*, Code of Ethics at ECF No. 47-7 at 13] ("Handbook"); (2) the Offer Letter; and (3) the PIP.

South Carolina generally recognizes and upholds at-will employment, but an employer and employee may contractually alter those terms, including through an employee handbook. *See Weaver v. John Lucas Tree Expert Co.*, No. 2:13-cv-1698-PMD, 2013 WL 5587854 (D.S.C. Oct. 10, 2013); *see also Small v. Springs Indus.*, 357 S.E.2d 452 (S.C. 1987). To prevail on a breach of contract claim under South Carolina law, a plaintiff bears the burden of establishing the existence and terms of the contract,

defendant's breach of one or more of the contractual terms, and damages resulting from the breach. *Taylor v. Cummins Atlantic, Inc.,* 852 F. Supp. 1279, 1286 (D.S.C.1994) (citing *Fuller v. Eastern Fire & Cas. Ins. Co.,* 124 S.E.2d 602 (S.C. 1962)). In an action asserting breach of contract based on a company policy, once an employer voluntarily publishes the policy to its employees, the employer may be held liable for breach of contract if the employee can establish that the policy applies to the employee, sets out procedures binding on the employer, and does not contain a conspicuous and appropriate disclaimer. *Grant v. Mount Vernon Mills, Inc.,* 634 S.E.2d 15, 20 (S.C. Ct. App. 2006). A handbook or policy cannot alter the at-will employment relationship if it is "couched in permissive language" such as "normally" and "should." *Grant v. Mount Vernon Mills, Inc.*, 634 S.E.2d 15, 21–22 (S.C. Ct. App. 2006). To be considered mandatory language, the purported contract must be "definitive in nature, promising specific treatment in specific situations." *Anthony v. Atl. Grp., Inc.,* 909 F. Supp. 2d 455, 467 (D.S.C. 2012) (quoting *Hessenthaler v. Tri-Cnty. Sister Help, Inc.*, 616 S.E.2d 694, 698 (S.C. 2005)). Moreover, Plaintiff must point the court to specific language that restricts the employer's right to terminate her. *Id.* at 468. Because Plaintiff has not pointed the court to any specific, mandatory language giving rise to an enforceable contract, the court need not decide whether the disclaimer was conspicuous under South Carolina law and simply assumes it was not for Plaintiff's benefit.

Defendant asserts that Plaintiff's contract claims are subject to dismissal because she was employed at-will and that the Offer Letter, PIP, and Handbook did not create a contractual relationship. Plaintiff alleges that Defendant breached the Code of Ethics

contained within its Handbook [ECF No. 47-7 at 13] because her call to the ethics hotline

"did not make a difference." [Pl.'s Dep. 273:7–274:21]. Defendant argues the Code of

Ethics is a policy statement of nondiscrimination that provides a reporting mechanism,

but it does not contain any guarantees or create an expectation that any particular process

must be followed. [ECF No. 47-1 at 32]. Plaintiff has not identified any mandatory

language, definitive in nature that promises specific treatment in the Code of Ethics.

The court's independent review reveals no such language, either.  The Handbook

states on the first page of the Handbook as follows:

**AT-WILL EMPLOYMENT RELATIONSHIP**
THE CSC EMPLOYEE HANDBOOK IS NOT CONTRACTUAL AND SHOULD NOT
BE RELIED UPON AS A CONTRACT. IN ADDITION, CSC REMAINS FREE TO
CHANGE ANY EMPLOYMENT BENEFIT OR OTHER CONDITION OF
EMPLOYMENT AT ANY TIME. IT IS IMPORTANT THAT YOU UNDERSTAND
THAT NOTHING IN THIS HANDBOOK CONSTITUTES A PROMISE OR
GUARANTEE AS TO THE TERMS AND CONDITIONS OF YOUR EMPLOYMENT
WITH CSC.

ALSO, NOTHING IN THIS HANDBOOK CONSTITUTES A PROMISE OR
GUARANTEE AS TO THE DURATION OF YOUR EMPLOYMENT WITH CSC.
JUST AS YOU ARE FREE TO LEAVE YOUR EMPLOYMENT WITH CSC AT ANY
TIME AND FOR ANY REASON, CSC HAS THE RIGHT TO TERMINATE YOUR
EMPLOYMENT AT ANY TIME, WITHOUT PRIOR NOTICE, AND WITH OR
WITHOUT CAUSE. OUR EMPLOYMENT RELATIONSHIP IS BASED ON THE
MUTUAL CONSENT OF EACH PARTY AND EITHER YOU OR CSC MAY
TERMINATE THE RELATIONSHIP AT ANY TIME. THIS IS KNOW AS
EMPLOYMENT AT WILL.

[ECF No. 47-7 at 10]. This language is expressly permissive and does not limit

Defendant's ability to terminate an employee.

Similarly, nothing in the language of the Offer Letter or PIP creates a contract, as

neither makes any promises or provides for any mandatory processes or procedures. In

contrast, the Offer Letter stated: "You also acknowledge and agree that acceptance of employment is not a contract of employment for a specified term, and that you may resign your employment with CSC at any time for any reason, and that your employment may be terminated at the will of CSC at any time for any reason." [ECF No. 47-6 at 2]. The PIP memorializes a performance review process. Plaintiff signed the last page of the PIP, acknowledging that she received and read the PIP and understood that "failure to achieve the objectives articulated in this plan may result in an extension or modification of the plan, reassignment to another position, a change in supervision, a demotion or termination from the company." [ECF No. 47-10 at 10].

Neither the Offer Letter or PIP contains any enforceable promises or mandatory language. Therefore, neither document creates contractual obligations sufficient to sustain a claim for breach of contract. Because Plaintiff has not pointed the court to any mandatory language in any document, Plaintiff's breach of contract claims are appropriate for dismissal.

C.     Plaintiff's Motion to Dismiss

Having made the foregoing recommendations on Defendant's motion for summary judgment, the undersigned recommends that Plaintiff's motion to dismiss be rendered moot. Alternatively, the undersigned recommends that Plaintiff's motion to dismiss be denied on the merits for the reasons that follow.

Plaintiff seeks to dismiss her federal claims and to have the court decline supplemental jurisdiction over the breach of contract claims. [ECF No. 53]. Defendant opposes the motion, arguing that it comes too late—a year and a half after Plaintiff

initiated this action in federal court, after discovery having closed and dispositive motions having been submitted. Defendant argues that Plaintiff is engaged in "classic forum shopping" not favored or condoned by the courts. [Entry #54 at 1]. Plaintiff denies forum shopping and asserts that it is within the court's discretion to dismiss the state claims for her to refile them in state court.  Defendant asserts that if Plaintiff were to refile her contract claims in state court, it would remove the case to federal court based on diversity jurisdiction; Plaintiff argues that this argument should not weigh in the court's determination.

In considering whether to retain jurisdiction over the state law claims, courts consider "the convenience and fairness to the parties, existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan v. Cahill,* 58 F. 3d 106, 110 (4th Cir. 1995).

The factors courts consider in determining whether to continue to exercise jurisdiction over state law claims after the federal claims have been dismissed weigh in favor of retaining jurisdiction. The parties have been in litigation in federal court since January 2013. Discovery closed in June 2014, after extensive written discovery and three depositions.  Defendant's motion for summary judgment has been fully briefed.  The undersigned concurs with Defendant that it would be prejudicial to Defendant to be forced to begin anew in state court, engage in duplicative efforts, expend unnecessary costs, and suffer the related delays in resolution at this late juncture.  This is particularly true where, aside from supplemental jurisdiction under § 1367, it appears that the court may have diversity jurisdiction over the state law claims anyway, independently of the

original federal jurisdiction that Plaintiff asserted, a matter that the court may consider in its evaluation of judicial economy. Further, Plaintiff's breach of contract claims do not involve a highly specialized area of state law, but one which the federal courts routinely address. Finally, the court notes that Plaintiff herself initiated this action in federal court, not state court. *South Carolina Dep't of Mental Health v. Hoover Universal, Inc.,* No. 3:03-cv-4118-JFA, 2006 WL 6463481 (D.S.C. Mar. 6, 2006) (stating the court does not condone a plaintiff attempting to remove itself from the forum it chose as a means of procuring a more favorable result), *aff'd sub nom. South Carolina Dep't of Disabilities & Special Needs v. Hoover Universal, Inc.,* 535 F.3d 300 (4th Cir. 2008).

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Defendants' motion for summary judgment [ECF No. 47] be granted and Plaintiff's motion to dismiss [ECF No. 53] be denied.

IT IS SO RECOMMENDED.

October 10, 2014                               Shiva V. Hodges
Columbia, South Carolina              United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).